## CITY OF FARGO, a Municipal Corporation, v. CASS COUNTY, a Municipal Corporation.

### (160 N. W. 76.)

**County treasurer — special assessments — in cities — percentage for collecting — retaining — official to collect — county — liability of — money must be turned over to county — to render liable.**

1. Various county treasurers from 1901 until 1910 retained for themselves 1 per cent of all Fargo city special assessments as a fee for collection. This action is to recover of the county this 1 per cent, amounting to $3,847.

The county never received this money, as it was never placed in any fund of the county treasurer. But the city claims that the county treasurer collected as the agent of the county, and which in turn was the collecting agent for the city under the law whereunder the county treasurer collected city special assessments and turned the same over to the city.

There is no statute expressly making the county liable to the city for misapplication of such funds by the county treasurer.

*Held:* The county treasurer, in making such collections, acted under the law designating him as the official to collect, and no liability of the county to the city arises unless the county actually receives the money of the city; and until the county treasurer turns money so collected over to the county and credits a county fund therewith, the county has not had and received city money.

---

Note.—That a county is not generally liable for damages caused by defaulting officer where it has not received the benefit of the money or it has not been paid into the county treasury is in accord with the general rule, as will be seen by an examination of the cases collected in a note in 39 L.R.A. 74, on liability of county for damages by defaulting officer, which is subdivision VI. of an extensive note on the liability of counties in actions for torts and negligence.

County — liability for commission on special assessments collected by treasurer — agency — doctrine of — not involved — county — not agent of city — treasurer in collecting — merely official designated.

2. That any liability of the county in such a case must arise from receiving city funds with no doctrine of agency involved, as the county is not an agent of the city in making such a collection; nor does its treasurer in collecting for the city, act as an agent of the county or city, but instead acts only as a person designated by law to collect for the city and for whose shortages or defalcations the county is not responsible to the city unless it has received funds so misappropriated.

County treasurer — collector of special assessments for cities — 1 per cent commission — allowed — retained — county not liable.

3. No liability on the part of the county can be inferred because by statute the bonds of the county treasurer are subject to the approval and action of the administration board of the county, leaving the treasurer without control or supervision by the city. The county officials involved are merely the official machinery designated by law for use in the raising and accounting for revenue for state, county, city, and other purposes.

County treasurer — collector of special assessments for cities — retaining commissions — not entitled thereto — services — reasonable value thereof — question not involved.

4. The county treasurer is not entitled to withhold 1 per cent of city special assessments; and it is immaterial that the official services of that official rendered to the city in collecting city assessments were of a reasonable value of 1 per cent thereof. There is no necessary relation in law between the salary allowed and the work required in office, and there can be no implied authorization to retain a fee on such grounds, where the statute does not grant one.

Opinion filed November 11, 1916.    Rehearing denied December 1, 1916.

Appeal from the District Court of Cass County, *Pollock, J.*
Affirmed.

*Emerson H. Smith,* City Attorney, and *Spaulding & Shure,* for appellant.

Where a county treasurer in his official capacity has money in his hands belonging to another, the remedy is by action against the county as for money had and received. In legal contemplation the county holds the money, hence the county should be sued. State ex rel. Worcester v. Nelson, 105 Wis. 111, 80 N. W. 1105.

Money wrongfully paid out by the county treasurer in a settlement

between the county and township must be accounted for by the county. Cumming Twp. v. Ogemaw County, 100 Mich. 567, 59 N. W. 240.

"The duties of the county treasurer are imposed by law, and in performing these duties he acts as an officer of the county, and not as the agent of the school district." Mineral School Dist. v. Pennington County, 19 S. D. 602, 104 N. W. 270.

The city had no contract on their part with the treasurer, and the knowledge of its officers that the county treasurer was retaining 1 per cent for collecting its special assessments is immaterial, and the city is not estopped to claim its rights. Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96; Leavenworth v. Rankin, 2 Kan. 357; Baltimore v. Reynolds, 20 Md. 1, 83 Am. Dec. 535.

"A municipal corporation cannot be made liable for an act of its agent by ratifying it after it is done, where the corporation had no power to authorize such act." Boom v. Utica, 2 Barb. 104; Arnott v. Spokane, 6 Wash. 442, 33 Pac. 1063; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291; Smith v. Philadelphia, 227 Pa. 423, 76 Atl. 221.

*A. W. Fowler,* State's Attorney, and *Wm. C. Green,* Assistant State's Attorney, for respondent.

In the absence of statute, there is no liability resting upon the county for the action of its treasurer in defaulting upon the collection and paying over of taxes, and the treasurer, and not the county, is the collector of taxes. Hart Twp. v. Oceana County, 44 Mich. 417, 6 N. W. 863; Vigo Twp. v. Knox County, 111 Ind. 170, 12 N. E. 305; White Sulphur Springs v. Pierce, 21 Mont. 130, 53 Pac. 103; Atlantic County v. Weymouth Twp. 68 N. J. L. 652, 54 Atl. 458; Wood v. Monroe County, 50 Hun, 1, 2 N. Y. Supp. 369; First Nat. Bank v. Saratoga County, 106 N. Y. 488, 13 N. E. 441; People ex rel. Martin v. Brown, 55 N. Y. 187; Westboro v. Taylor County, 90 Wis. 355, 63 N. W. 287; School Dist. v. Saline County, 9 Neb. 403, 2 N. W. 877; Lancaster County v. State, 74 Neb. 211, 104 N. W. 187, 107 N. W. 388; Aplin v. Van Tassel, 73 Mich. 28, 40 N. W. 847; Crandon v. Forest County, 91 Wis. 239, 64 N. W. 847.

Our system of taxation was taken from Minnesota. St. Paul & S. C. R. Co. v. Robinson, 40 Minn. 360, 42 N. W. 82; St. Paul v. Colter, 12 Minn. 51, Gil. 16, 90 Am. Dec. 278; Guilder v. Dayton, 22 Minn.

371; Logan County v. Carnahan, 66 Neb. 685, 92 N. W. 984; 95 N. W. 812.

"In dealing with taxes certified by city authorities to the county clerk, neither the county clerk nor the county treasurer acts as agent of the county." Kelley v. Gage County, 67 Neb. 6, 93 N. W. 194, 99 N. W. 524.

"A county is not liable in damages for the negligent acts of its officers, unless made so by statute." Hopper v. Douglas County, 75 Neb. 329, 106 N. W. 330; Gray v. Tompkins County, 93 N. Y. 603; State ex rel. Atty. Gen. v. Leavenworth County, 2 Kan. 61; Crandon v. Forest County, 91 Wis. 239, 64 N. W. 848; Cedar Rapids, I. F. & N. W. R. Co. v. Cowan, 77 Iowa, 535, 42 N. W. 436; Mineral School Dist. v. Pennington County, 19 S. D. 602, 104 N. W. 270; Vinton v. Cattaraugus County, 89 Hun, 582, 35 N. Y. Supp. 285; Newbold v. Douglass, 123 Wis. 28, 100 N. W. 1040; Crowninshield v. Cayuga County, 124 N. Y. 583, 27 N. E. 242; Bridges v. Sullivan County, 92 N. Y. 572; Cumming Twp. v. Ogemaw County, 100 Mich. 567, 59 N. W. 240.

The county treasurer, and not the county, is the agent of the city in collecting its taxes. Pol. Code, chap. 42, art. 13, Comp. Laws 1913, §§ 3341, 3342, et seq. 3682, Laws 1905, chap. 62.

Assuming that this 1 per cent does not belong to the county treasurer, and that the county is liable for it, it clearly would not belong to the city. It would belong to the individual taxpayer, and the city could not recover. Westboro v. Taylor County, 90 Wis. 355, 63 N. W. 287; Dickey County v. Hicks, 14 N. D. 73, 103 N. W. 423; Krump v. First State Bank, 8 N. D. 75, 76 N. W. 995.

The collection of delinquent taxes is analogous to an open account, and the defendant would not be liable for interest from the date of collection, but only from the date of demand. Spooner v. Washburn County, 124 Wis. 24, 102 N. W. 325.

It is well settled that although a bond of a public official may run to the county or state, a recovery may be had thereon by any corporation aggrieved in an action in its name. Hollister v. Hubbard, 11 S. D. 461, 78 N. W. 949; Guernsey v. Tuthill, 12 S. D. 582, 82 N. W. 190; Stewart v. Carter, 4 Neb. 564; Rogers v. Gosnell, 51 Mo. 466; Taaffe v. Rosenthal, 7 Cal. 515; People v. Holmes, 5 Wend. 191; Kollock v. Parcher, 52 Wis. 393, 9 N. W. 67; Pioneer Fire-Proof & Constr. Co.

v. McClay, 54 Neb. 663, 74 N. W. 1063; 3 Enc. Pl. & Pr. 640; Lee
v. Charmley, 20 N. D. 570, 33 L.R.A.(N.S.) 275, 129 N. W. 448.

Goss, J. This action for money had and received is brought by the
city of Fargo against Cass county for $3,847 and interest. The city has
appealed from a judgment of dismissal. The facts are undisputed.
Various county treasurers of Cass county from July, 1901, until No-
vember, 1910, retained 1 per cent of all city special assessments, as
fees for collection. This action is brought to recover the aggregate
of such deductions.

The county contends that this 1 per cent was misappropriated by
said officials, and that it has not had or received the use or benefit of
any part of said so-called commissions; and under the uncontroverted
proof and findings such is the fact. These amounts were taken without
authority of law, and none of the deductions ever reached the coffers
of the county, unless it can be said that the payment of the county treas-
urer was a payment to the county. But as no part of this amount was
ever credited to or placed in any county fund, then as between these two
municipalities the county has not received it. The county treasurers
simply have failed to turn over this amount to either the county or the
city, retaining it themselves. Hence any liability of the county to the
city must be predicated upon the premise that the county is the agent
of the city in the collection of city special assessments; and therefore
that the action of the county treasurer in receiving payment bound the
county as a collecting agent for the city to make good to the latter any
defalcation or shortage of the county treasurer. This in turn depends
upon whether a county treasurer is in a legal sense an agent of the
county in the collection of such taxes, and whether as between munic-
ipalities the doctrine of *respondeat superior* applies to hold the county
liable for misappropriation of city funds by its county treasurer, where
no statute creates such a liability.

Without tracing in this opinion the history of the statute, it is suffi-
cient to state that statutes have authorized these county treasurers to
collect said special assessments and turn the full amount collected with-
out any deduction whatever, over to the city. Special assessments levied
by the city are trust funds and collectable by the county treasurer for
the city, to be applied and disbursed by it for particular purposes,

Pine Tree Lumber Co. v. Fargo, 12 N. D. 360–377, 96 N. W. 357; State ex rel. Viking Twp. v. Mikkelson, 24 N. D. 175, 139 N. W. 525. While the county is responsible to the state "for the full amount of taxes levied for state purposes," § 2183, Comp. Laws 1913, there is no corresponding statutory liability of the county to the city. Consequently, the county cannot be held by the city for diversion of city funds collected by the county treasurer unless the county actually received the funds so diverted. Then, and only then, can the county be held as for moneys had and received by it. And such liability is not predicated upon any doctrine of agency. Under no circumstances can the county be held by the city for a shortage of the county treasurer in city money collected, where the county has not received either the money diverted or a resulting benefit therefrom. While the county treasurer made these collections under authority of law, nevertheless he "was the custodian of the money, *selected not by the county but by the law,*" Gray v. Tompkins County, 93 N. Y. 603. "We are of opinion that the moneys due the state were payable by the treasurer of the county, not as its officer or agent, but as an individual designated by his official name for the performance of specific duties, and that the county is not responsible for his omissions or defaults in respect thereto, nor at all concerned with them any further, nor in any other manner, than the law has declared." First Nat. Bank v. Saratoga County, 106 N. Y. 488–495, 13 N. E. 439. The state sought to recover from a county for state taxes collected and embezzled by a county treasurer where no statute similar to § 2193, Comp. Laws 1913, declared the county liable to the state therefor.

It is precedent on the facts in this instant case and announces the law applicable. This is but another application of the rule early announced in the leading case of Lorillard v. Monroe, 11 N. Y. 392, 62 Am. Dec. 120, holding that "a town is not responsible for any mistake or misfeasance of the assessors and collectors in the performance of their official duties; they are not its agents." The court says: "The imposition and collection of the public burthens is an essential and important part of the political government of the state, and it is committed, in part, to the agency of officers appointed by the local divisions called towns, and in part to the officers of the counties, upon reasons of economy and convenience; and the official machinery which is organized

within the towns and counties is public in the same sense as is that part
of the same system which is managed by the state officers residing at
the seat of government, and whose operations embrace the whole state.
. . . The assessors and collectors of taxes are independent public
officers, whose duties are prescribed by law, and that they are not, in
any legal sense, the servants or agents of the towns, and that the towns,
as corporations, are not responsible for any default or malfeasance in
the performance of their duties. . . . In Martin v. Brooklyn, 1
Hill, 545, the rule was laid down by the late Justice Cowen, that even
a municipal corporation was not liable for the misfeasance or nonper-
formance of one of its officers in respect to a duty imposed by the stat-
ute upon such officer, though it was conceded, that if the duty had been
imposed [by the statute] upon the corporation, as in the case of streets
and sewers, which the corporate body was bound to repair, the rule
would have been otherwise. . . . A fortiori, where the duty which
has been violated was imposed by a public law of the state, the corpora-
tion, though it had the appointment of the officer, would not be liable."
And this has been followed and these principles applied in a case in all
material particulars identical with the case at bar and under almost
identical statutes in Indiana, in Vigo Twp. v. Knox County, 111 Ind.
170, 12 N. E. 305, the syllabus reading: "A county treasurer is in no
such sense the agent of the county as that the maxim Respondeat superior
can be invoked to hold the county liable for his misappropriation of
public funds, in the absence of a statute creating such liability." In
the opinion it is said: "Counties, in a very important sense, occupy a
double relation. In one relation, a county is a municipal corporation,
charged with corporate functions and duties, and invested with cor-
porate powers. These are exercised for the benefit of the municipality,
and in respect to these the county is responsible. A county is also a
territorial and political division of the state, established as an instru-
mentality of government and municipal regulation. . . . Some of
the duties of county boards, as well as other county officers, relate to
and are exercised in the discharge of their functions as governmental
agencies. Of this character are the duties of the board, as also those of
the county treasurer and auditor, so far as they are connected with the
revenue system of the state. In exercising these duties the officers exert
a power delegated immediately to them by the state, for the benefit of

all the citizens who are affected by the sovereign power which pertains to the levying and collecting of taxes. The county as a municipality is not specially interested in the exercise of these powers, except so far as they relate to its own municipal affairs. It is hence not liable for derelictions of officers in respect to their conduct as mere agents of the government. . . .

"He [the county treasurer] is a person selected in the manner prescribed by law, and has certain public functions to perform, which are all prescribed by statute, and primarily laid upon him, and for the performance of which he is held civilly and criminally responsible. He is not, therefore, the agent of the county in respect to funds collected by him for townships, nor can the county be held answerable for his delinquency, in the absence of an express statute making it liable. This is according to the principle deducible from the authorities, which hold, in effect, that a municipal corporation is not to be regarded as principal, and therefore liable for the defalcations and delinquencies of its public officers in failing to perform public duties which the law has laid upon them, and in respect to which the municipality is neither invested with corporate power, nor charged with any corporate duty or statutory liability, and from the performance of which it derives no special advantage. The officer, under such circumstances, is regarded as an independent public agent, or quasi civil officer of the government, personally answerable for his misconduct or official delinquencies, and not the agent or servant of the municipality. Omissions of duty imposed upon such an officer by law, however injurious they may be to others, are not injuries for which the corporation of which he is nominally an officer is liable."

The case cites Hannon v. St. Louis County, 62 Mo. 313; Morrison v. Lawrence, 98 Mass. 219; Fisher v. Boston, 104 Mass. 87, 6 Am. Rep. 196, and Ogg v. Lansing, 35 Iowa, 495, 14 Am. Rep. 499; Maxmilian v. New York, 62 N. Y. 160, 20 Am. Rep. 468; Prather v. Lexington, 13 B. Mon. 559, 56 Am. Dec. 585; Mead v. New Haven, 40 Conn. 72, 16 Am. Rep. 14; Eastman v. Meredith, 36 N. H. 284, 72 Am. Dec. 302; Fowle v. Alexandria, 3 Pet. 398, 7 L. ed. 719. The same reasoning was applied in Board of Education v. Boyd, 58 Mo. 276, citing Reardon v. St. Louis County, 36 Mo. 555; Ray County use of Common School Fund v. Bentley, 49 Mo. 236.

The following is from 11 Cyc. 517: "Where taxes due a township or village are by virtue of statute collected by the county treasurer, the city is liable to the township therefor when the treasurer refuses to pay them over."

The authorities cited under this text are found in the brief of the appellant; *viz.*, White Sulphur Springs v. Pierce, 21 Mont. 130, 53 Pac. 103; Potter County v. Oswayo Twp. 47 Pa. 162; and Oneida v. Madison County, 136 N. Y. 269, 32 N. E. 852. Examination discloses that this text is not applicable under the facts before us, where the tax is not paid over to the county. If applied to the facts in suit, these cases do not sustain the text. The Montana case was not against the county, but against its county treasurer, who was compelled to pay over taxes in a suit in which the validity of the ordinance authorizing the tax levy was attempted to be litigated. The question under consideration was neither involved nor considered. In the New York case the county treasurer, after receiving the fund in dispute belonging to the village, "paid out the same for general county purposes," and the county so receiving the money from its treasurer must respond to the village entitled to it instead. This one case like others cited in the brief of appellant is within a well-defined exception to the general rule of non-liability under discussion. The county, having received the money, is liable as for money received. The Pennsylvania case may be taken either way from the fact that it does not clearly appear whether the shortage was one upon the county books with the county treasurer embezzling county funds leaving the county short with the township, or whether it was a case similar to that under consideration on the facts. If the case be construed as supporting appellant's contention, it stands alone as precedent. But if taken as applying to facts under which the county was charged on its books with the township's money, with county funds embezzled, it is in harmony with authority. However, the text quoted from 11 Cyc. 517, is qualified by the further statement: "A township which has suffered a loss of its funds by the defalcation of the county treasurer is entitled to its proportion of a sum recovered on his bond, but it cannot maintain an action therefor against the county unless its share has actually been covered into the county treasury to the credit of the general fund." This qualification is in harmony with the cases.

The city stands in no different position than one asking the recovery

of taxes illegally and involuntarily paid to a tax collector. In such case the test as to whether the action lies against the county or on the contrary must be prosecuted against the official depends upon whether the county has received the money from the official. In Cooley on Taxation, at page 1508, the rule is stated to be: "The proper action against a municipality in these cases is assumpsit for money had and received, the liability not attaching *until the money is paid over, and being then based upon the receipt of the money,* and not upon the illegalities which preceded it."

Appellant cites several cases as sustaining a recovery by the city. In State ex rel. Worcester v. Nelson, 105 Wis. 111, 80 N. W. 1105, it was held that though the township was entitled to the money, yet, when it had passed into the county treasury, and had become a part of the county moneys, though still in the custody of the treasurer, it could not be recovered by mandamus against the official. In Newbold v. Douglas, 123 Wis. 28, 100 N. W. 1040, it was held, in harmony with the general rule, that resort must be had against the county, *it having received the money,* and that the action could not be maintained against the county treasurer. In Cumming Twp. v. Ogemaw County, 100 Mich. 567, 59 N. W. 240, it was held, quoting from the syllabus: "Where the county treasurer wrongfully paid out money collected from delinquent taxes belonging to a township, it is no defense to an action therefor against the county that the board of supervisors had settled with the county treasurer before it had notice of the township's claim."

Nothing in that holding favoring appellant's contention. In Iowa City v. Johnson County, — Iowa, —, 61 N. W. 995, it seems that a recovery was allowed under circumstances very similar to those at bar, but upon a stipulation that "it was mutually understood and agreed between said city and the defendant . . . that the city should pay to the said county for collecting said taxes, 2 per cent on the dollar, both parties acting upon the theory and belief that under the law the county treasurer was entitled to charge said amount,—2 per cent on the dollar for collecting such taxes,—and said county treasurer did deduct from such money so collected, 2 per cent under a misapprehension of the law."

In disposing of a contention it was decided merely that the money could not be retained as paid to the official under a mistake of law.

Judgment was ordered against the county. But upon a rehearing it was held that no appeal had been taken, and what was said in the first opinion was withdrawn and the appeal dismissed for want of jurisdiction, in 99 Iowa, 513, 68 N. W. 815. No questions raised here were there involved or considered. The same is true in Mineral School Dist. v. Pennington County, 19 S. D. 602, 104 N. W. 270, relied upon by appellant. The only question was whether the county could charge back against a school district a proportionate share of county expense in collecting taxes levied by the school district, and collectable by the county. It was held to be a county, and not a school district, expense. In the opinion the following language set forth in appellant's brief is used: "The duties of the county treasurer were imposed by law, and in performing these duties he acted as an officer of the county, and not the agent of the school district. " This does not state as appellant would construe it that the official was an agent of the county. He acted because required so to act by statute. No relation of principal and agent existed between the county and its official.

The city contends that our statutes are peculiar and should be construed without reference to holdings upon statutes elsewhere. However, as the statutes of this state were enacted with reference to the rules of law generally applicable to the collection of taxes by counties and its constituent municipalities, it would do violence to the ordinary rules of statutory construction to disregard all precedent. Nor do our statutes differ greatly from those in many states, as the decisions cited will disclose.

The city also contends that inasmuch as the approval of the county treasurer's bonds, inspection of his books, making of settlements with him, and supervision of his office generally, is placed by statute with county officials to the exclusion of those of the city, the county should be held liable. The same contention was urged in Indiana in Vigo Twp. v. Knox County, 111 Ind. 170, 12 N. E. 307, and is there answered as follows: "Whatever supervisory power boards of commissioners have in respect to approving official bonds, inspecting the accounts of, and making annual settlements with, county treasurers, is not committed to them as duties or functions pertaining to the municipal corporation, but rather as the exercise of a portion of the administrative or political power of the state. In all that the commissioners are authorized to do

in respect to the control or supervision of the county treasurer or his duties, or in respect to the levying and collection of taxes, they become: merely a part of the official machinery which is organized within each county for the purpose of raising revenue for state, county, township, and other local purposes. Lorillard v. Monroe, 11 N. Y. 392, 62 Am. Dec. 120."

The determining basic principle in this decision is that it is the wrongful receipt and retention of city funds that must render this county liable, if at all, and that no theory of agency of the tax collector can do so. This principle is recognized by the reasoning in Northern Trust Co. v. First Nat. Bank, 33 N. D. 1, 156 N. W. 214. It is there said: "And again let us suppose that McConville pretended to pay out $7,000 of the county's money to himself as treasurer of one of the school districts, but that in fact the money remained in the Cass county treasury. Supposing then that McConville was removed as county treasurer, and the school district sued Cass county for the money, showing that this particular $7,000 had always remained part of the Cass county funds. Can it be doubted that the school district would recover judgment?"

As a guide to county officials it may be said that the county is incorrect in its content n that the law formerly authorized the retention by county treasurers of 1 per cent of city special assessments collected, as a fee for such services rendered. There no longer exists any right to make such a deduction, even though the city had, under the requirements of § 3729, Comp. Laws 1913 (since expressly repealed by chap. 75, Sess. Laws 1915), added 1 per cent to the special assessment. Such would constitute a surplus and remain a part of the special assessment fund, and as such belong to the city. State ex rel. Viking Twp. v. Mikkelson, 24 N. D. 175, 139 N. W. 525. It is also immaterial that the services rendered by the county treasurers in collecting the special assessment and accounting to the city were of the reasonable value of the 1 per cent attempted to be charged therefor. There is no necessary relation in law between the salary allowed and the work required in the performance of official duties. It is sufficient to say that before the fee could be retained the law must plainly authorize its retention. State v. Stockwell, 23 N. D. 70, 134 N. W. 767; State ex rel. Braatelien v. Drakeley, 26 N. D. 87, 143 N. W. 768. Before a portion of this trust

·fund can be lawfully· segregated and retained, statutory sanction for it must be found, and there is none. The judgment appealed from is affirmed.