State ex rel. Voight vs. Hoeflinger.

STATE ex rel. VOIGHT vs. HOEFLINGER.

STATUTES.  (1, 2, 5) *Public act—"general law."*  (3, 5) *Effect of repeal.*  (4, 5)
MANDAMUS — *when awarded.*  (5) *Drainage Fund.*

1. An act regulating the disposal of a part of the public funds of the state, previously regulated by general laws, is a *public* act, of which the courts will take judicial notice, and a "general law" within the meaning of sec. 21, art. VI., of the state constitution, so that it does not take effect until published; although it applies only to moneys which, under the previous general laws were payable only to two particular towns.

2. An act repealing a public or general law is also a public or general law.

3. Whatever is given by statute may be taken away by statute, except vested rights acquired under it, and except where the granting statute is in the nature of a contract on the part of the legislature.

4. Where, on appeal from a judgment awarding a peremptory *mandamus*, it appears that the relator is *now* entitled to such writ, the judgment will be affirmed without regard to the question whether it was correct when rendered.

5. Under ch. 537, Laws of 1865, and ch. 151, Laws of 1869, so much of the "Drainage Fund" as arises from the sale of "swamp and overflowed lands" within any town in each year is to be paid over to the treasurer of the town by the county treasurer, who receives it from the state treasurer. By an act published as ch. 64, P. & L. Laws of 1870, all the drainage fund belonging to the towns of B. and J. in the county of M., and all of said fund that should be appropriated to said towns for the next three years, was directed to be set apart and used for the construction of a certain bridge in said county, and commissioners were appointed to superintend the construction of said bridge, with authority to draw said moneys from the county treasury. A peremptory *mandamus* was awarded by the court below in favor of the treasurer of one of said towns, commanding the county treasurer to pay over *to him* so much of said moneys as belonged to that town (instead of holding it subject to the order of the bridge commissioners). Pending an appeal from this judgment, the act of 1870 was absolutely repealed by an act published in September, 1871, as ch. 70, P. & L. Laws of 1871. *Held,*

(1). That both of said acts of 1870 and 1871 were public and general laws, of which the court takes judicial notice, and which took effect only upon publication.

(2). That no vested rights were acquired under the act of 1870 — no contract having been entered into for the construction of the bridge.

(3). That the general laws in force before 1870, regulating the drainage fund, now apply to said moneys belonging to the towns of B. and J.; and the town treasurer is *now* entitled to demand and receive from the county treasurer the moneys in dispute.

(4). This court therefore affirms the judgment, without inquiring whether it was correct when rendered.

APPEAL from the Circuit Court for *Marathon* County.

The following statement of the case was originally prepared as a part of the opinion, by DIXON, C. J.

"One-half of the net proceeds of the sales or of the income derived by the state from the swamp and overflowed lands do-

nated to it by congress for the purpose of reclaiming such lands, has been set apart by the legislature for that object, and a fund created denominated by statute "the drainage fund." The system provided for the distribution of this fund is such, that so much of it as arises from the sales of any such lands within any town in each year shall be paid over to the treasurer of such town by the treasurer of the county, who receives the same from the treasurer of the state. The money thus received by the town treasurer is to be expended, under the direction of the board of supervisors of the town, in draining and reclaiming the swamp and overflowed lands in that town. These provisions are made by general, or what constitutes part of the public, law of the state. Laws of 1865, ch. 537 ; Laws of 1869, ch. 151 ; 1 Taylor's Statutes, pp. 528, 529 and 667 to 672.

" On the 17th of February, 1870, the legislature, by an act approved on that day, enacted that ' all the drainage fund belonging to the towns of Berlin and Jenny, in Marathon county, and all of said fund that may be appropriated to said towns for three years from the passage of this act, shall be set apart for and used in the construction of a bridge across the Wisconsin river, at the village of Jenny.' The act appointed commissioners to superintend the building of such bridge, and provided that the funds so appropriated for that purpose should be drawn from the county treasury on the order of such commissioners. P. & L. Laws of 1870, ch. 64. The relator in this action is the treasurer of the town of Berlin, who, after the passage of the above act, made demand of the defendant, who is the treasurer of the county of Marathon, for the sum of $4,512.57, proceeds of the sales of swamp and overflowed lands situate within the town of Berlin, and which sum had been paid over to the defendant, as treasurer of the county, as part of the drainage fund which by the general law would belong to the town. The defendant refused to pay the money to the relator, on the ground that it had been otherwise appropriated

by the special act; and thereupon this writ of *mandamus* was sued out in the court below, dated and tested on the 13th day of July, 1870. The cause was tried at a term of court begun and held on the 15th of August, 1871, and judgment given for the relator, awarding a peremptory writ of *mandamus* against the defendant, commanding him to pay over the money to the relator. From that judgment this appeal was taken.[*]

" At the session of the legislature in 1871, the act thus divesting the fund of the two towns was repealed. The repealing act was approved February 17, 1871, and was absolute, leaving no part of the former act in force. P. & L. Laws of 1871, ch. 70. The certificate of the secretary of state appended to this volume of private and local laws, bears date September 29, 1871."

*G. L. Park* and *D. Lloyd Jones*, for appellant, cited the act of congress of 28th September, 1850 (9 U. S. Stats., 519, 520), and argued that, by the conditions of the grant thereby made, the legislature is authorized to determine what proportion of the swamp lands or the proceeds thereof is necessary to be used in the reclamation of such lands, and for what purpose the remainder of the fund shall be used (*State ex rel. Douglass v. Hastings,* 11 Wis., 448; 23 Mo., 456; 21 Ill., 18); that ch. 537, Laws· of 1865, which appropriates the proceeds of one-half these lands to the normal school fund, proceeds upon this view; and that if that act, under which the relator claims, is valid, so also is ch. 64, P. & L. Laws of 1870.

*E. L. Browne* and *W. C. Silverthorn*, for respondent :

Prior to the passage of ch. 64, P. & L. Laws of 1870, there was due to the town of Berlin, under the law of 1865, the sum of $4,512.57, moneys received by the commissioners of school and university lands, in trust for the town, on sales of swamp lands in said town made in 1869 ; and the town board had

---

[*] The judgment was for the payment of $2,900; the remainder of the sum originally demanded having been previously paid over to the relator by the defendant.—REP.

made contracts, expended money, and actually entered upon the work of draining and reclaiming the overflowed lands of the town. Under these circumstances, the legislature had no authority to make any other disposition of the funds. 2. At the time of the hearing in the court below, said ch. 64 was repealed by ch. 70, P. & L. Laws of 1871, which took effect on its passage and approval, February 17, 1871; and by the general law then in force the town of Berlin was entitled to so much of said funds as then remained in defendant's hands, viz., $2,900; and the judgment of the court directing the defendant to pay over that amount was right. 3. The acts of congress of September 28th, 1850, and March 2d, 1855, granted to each state the swamp lands within its limits *for a special purpose;* and this state had no authority under its constitution to dispose of the swamp lands thus granted, or the proceeds thereof, except in strict accordance with the terms, and to carry out the intention of the grant. Const. of Wis., art. VIII., sec. 10 ; *State ex rel. Douglass v. Hastings,* 11 Wis., 452. The act of congress and the constitutional provision cited are no less binding on the legislature than upon the state treasurer or the courts. Ch. 64, P. & L. Laws of 1870, was therefore void.

DIXON, C. J. We have no evidence that ch. 70, P. & L. Laws of 1871, was specially published, or that there was any publication until it appeared in the volume of private and local laws for that year, to which the certificate of the secretary of state is appended, bearing date September 29, 1871. Assuming the last as the true date of publication (which, according to the rule established by this court in such cases, we must do), the repealing act did not take effect until that time, and consequently not until more than a month after the trial and judgment in the court below, provided the act was a general one requiring publication before it could take effect, which will presently be considered.

It is not alleged in the answer, nor is it shown or pretended,

that the bridge commissioners had entered into any contract or incurred any obligation or expense under the act of 1870, before this action was commenced, or before that act was repealed.

Under these circumstances two questions arise: first, as to the nature of these acts published in the volume of private and local laws—whether they are so far public that publication must have been made before they took effect, and that this court must take judicial notice of them; and, second, as to the effect upon this action, or upon the rights of the parties hereto, of the repeal of the first act after the trial and judgment in the court below, and before the cause was brought to a hearing in this court.

We are satisfied, upon the principles stated and authorities cited in the opinion of this court by Mr. Justice PAINE, in *State ex rel. Cothren v. Lean*, 9 Wis., 286, 288, that the acts are of such a public nature that judicial notice should be taken of them by the courts, and that publication was required under the provision of the constitution. They were public because they regulated and disposed of a portion of the public funds of the state, previously regulated and disposed of by a general law of the state. They operated, or the first one did, as an exception or proviso to the general law, or as a repeal of it *sub modo* only. The building of the bridge to which a portion of the public funds were diverted from the purposes prescribed by the general law, was also a public object—a matter of public concern. The repeal of a public or general law can of necessity only be by public or general law. The repealing act was a general law, and the effect of it in this case was to restore the provisions of the previous general law. *Smith v. Hoyt*, 14 Wis., 252.

The other question relates to the effect of such repeal upon the action and rights of the parties in this court. As the law now stands, there can be no question but that the relator is at this time entitled to demand and receive the money from the defendant, and that the judgment of the court below awarding the peremptory *mandamus* is now right, however erroneous it

State ex rel. Voight vs. Hoeflinger.

may have been at the time it was rendered by that court. No principle of law is better settled than that "whatever is given by statute may be taken away by statute," except vested rights acquired under it, and except also that the statute must not be in the nature of a contract on the part of the legislature. Some of the authorities go even farther, and hold that a law merely divesting antecedent vested rights of property, where there is no contract, is not inconsistent with the constitution. The cases illustrating this principle, and in which it has been enforced, are very numerous in the books, and we only refer to the following, some of which are strongly marked and presented questions quite analogous to that here involved. *Baltimore & Susquehanna R. R. Co. v. Nesbit*, 10 How., U. S., 395; *Norris v. Crocker*, 13 id., 429, and cases cited in brief of counsel on page 436; *Watson v. Mercer*, 8 Peters, 88, 110; *Ex parte McCardle*, 7 Wallace, 506; *Butler v. Palmer*, 1 Hill, 324; *Foster v. The Essex Bank*, 16 Mass., 245; *Grim v. Weissenberg School District*, 57 Pa. St. R., 432, 438.

There was nothing in the act of 1870 in the nature of a contract between the state and the bridge commissioners or any other party. The commissioners themselves were the creatures of the act, and the money donated or proposed to be expended in building the bridge was a mere gift, which the legislature could revoke or withdraw at any time before it was paid over to the commissioners or expended on their orders, or at all events at any time before the commissioners had entered into any contract or incurred any obligation on the faith of the act. Supposing it to have been competent for the legislature to pass the act, of which we entertain no great doubt, the money was that of the state by its legislature to give, and by the same sovereign power to withhold, whenever in the judgment of the legislature it was deemed expedient to do so. The repealing act was valid, and full effect must be given to it, which deprives the defendant of all power or authority to retain the money as against the demand of the relator.

State ex rel. Voight vs. Hoeflinger.

Under these circumstances we are of opinion that it is the duty of this court to affirm the judgment of the court below, without inquiry or investigation as to whether it was correct at the time it was rendered or not. It is clearly correct now, and that is enough. Were we to reverse it, it would only be to remand the cause with directions for that court to render the same judgment over again, which cannot be necessary.

*By the Court.*— The judgment is affirmed.