[Civil No. 2935.   Filed February 10, 1931.]

[295 Pac. 785.]

JOHN C. CALHOUN, as Treasurer of Maricopa County, Arizona, and *Ex-officio* Treasurer of Maricopa County Municipal Water Conservation District No. 1, Appellant, v. MARICOPA COUNTY MUNICIPAL WATER CONSERVATION DISTRICT No. 1, a Municipal Corporation, Appellee.

Mr. Henry J. Sullivan, Mr. Austin O'Brien and Mr. Wm. C. Eliot, for Appellant.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellee.

ROSS, J.—This is an action by Maricopa County Municipal Water Conservation District No. 1 against the county treasurer of Maricopa county, brought to compel said treasurer to transfer to the credit of the district some delinquent tax penalties collected by him in his capacity as county treasurer for and on account of the district, of which he was also *ex-officio* treasurer.

It is alleged that the county treasurer paid such taxes so belonging to the district into the county's general fund; that there is and has been all the time sufficient money in said general fund with which to reimburse the district. The county treasurer answered that such tax penalties belonged to the county and for that reason he had not paid or credited them to the district, and that he would not do so unless ordered by this court.

Upon the issues thus formed, we held in a former appeal (35 Ariz. 541, 281 Pac. 465) that the delinquent tax penalties sued for belonged to the district, remanded the case, and directed the lower court to proceed in accordance with our opinion. The trial court, after the case was remitted, no further answer being filed by defendant, issued a peremptory writ directing the county treasurer to pay over such sum to the district. After the writ was issued, the then county treasurer, John C. Calhoun, who had succeeded the original defendant J. K. Ward as defendant and county treasurer, made a motion to the court to correct and modify the writ. This motion was denied, and the county treasurer has appealed.

Claiming that the writ is indefinite, in that it cannot be determined therefrom whether it runs against him as county treasurer or as *ex-officio* treasurer of the district, the defendant asks that it be corrected to show certainly in which capacity he was *mandamused*. From a reading of the writ, we conclude that this part of the motion is more hypercritical than meritorious. The writ directs the county treasurer to pay from the general funds of the county to the funds and account of the district the sum wrongfully appropriated by the county or county treasurer.

The request for modification is as follows:

"Your petitioner shows the court that as Treasurer of Maricopa County he has not in his hands at this time any fund or sums of money from which he may legally pay to the District the sum of money as directed by the said writ, if such is the intent of said writ, and that he will be unable to do so until the amount has been included in the next budget and the taxes levied and collected therefor."

This motion was unverified and was filed eleven days after the issuance of the writ. It does not show that the county treasurer was without money or funds available for the payment of the district's claim at the time of the issuance of the writ. What it does show is that at the time of the filing of the motion the county treasurer had no such funds.

When Treasurer Ward filed his answer to the complaint, he, in effect, stated he had on hand funds available and that he would pay the district the sum involved if ordered to do so by the court. There was no contention that the money had been spent for any county purpose or that it had not been preserved pending the decision of the question of ownership. The first suggestion that there were no funds with which to pay the court's judgment was made by Ward's successor eleven days after the judgment

directing the issuance of the peremptory writ. From the state of the record, we conclude that the county treasurer upon collecting the tax penalties, instead of crediting them to the district, placed them in the general funds of the county, and that the county may or may not have converted the money. If it had converted the funds, it does not appear that it did so until after the court had entered judgment directing the treasurer to pay such sum over to the district.

The remedy of *mandamus* was not questioned throughout the proceedings, and it is not now, only incidentally in the motion to modify the writ. However that may be, we think that *mandamus* was the proper remedy, and it makes no difference whether the county has converted the district's money or not. In *State* v. *McNamer*, 62 Mont. 490, 205 Pac. 951, 954, *mandamus* was allowed to compel the county treasurer of Glacier county to pay over to the city of Cut funds belonging to the city but which had been diverted by the county treasurer. The court there said:

"The above also disposes of the point made by defendant that *mandamus* will not lie in the case at bar for the reason that the county treasurer, if required to pay the sum due the city, would have to take the money that was already appropriated to other funds.

"While we are fully aware of the rule that *mandamus* will not lie to compel the doing of something unauthorized by law or impossible of performance, yet in the instant case such a rule is inapplicable. In contemplation of law the city's money is still in the county treasury, and the fact that the money has been diverted by the arbitrary act of the county treasurer into some other fund or funds does not excuse the treasurer from the duty of paying the same over to the city."

See, also, *People ex rel. Martin* v. *Brown*, 55 N. Y. 180; *People* v. *Comptroller*, 77 N. Y. 45; *People ex rel. Rohr* v. *Owens*, 110 App. Div. 30, 96 N. Y. Supp. 1054; *State* v. *Hoeflinger*, 31 Wis. 257; *State* v. *Roderick*,

23 Neb. 505, 37 N. W. 77; High's Rem., 3d ed., § 367; 2 Spelling on Inj. and Extr. Rem., 2d ed., § 1512; Merrill on Mandamus, § 134.

There is nothing to the contention of defendant that if he is compelled to pay the district its money it will violate the state budget law. Accretions of this kind are not a "source of revenue" available to a county. It could not have been estimated as a resource of the county in making up the budget, and since under the budget law, sections 3097, 3098, Revised Code of 1928, "no debt, obligation, or liability" could be incurred or created in excess of the budget estimates, the board of supervisors had no right to spend it.

The appeal is without merit.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.