BOARD OF COM'RS. OF BIG HORN COUNTY
ET AL. v. BYRON DRAINAGE DIST.
SAME v. LOVELL DRAINAGE DISTRICT
SAME v. SUNLIGHT DRAINAGE DISTRICT

(Nos. 2041-2043; January 25, 1938, 75 Pac. (2d) 759)

418

The causes were submitted for the plaintiffs in error upon the brief of *Thos. M. Hyde* of Basin, and *Wm. C. Snow* of Cheyenne, as associate counsel.

The cause was submitted for defendants in error upon the brief of *C. A. Zaring* of Basin and *L. A. Bowman* of Lovell.

BLUME, Chief Justice.

The Byron Drainage District, the Lovell Drainage District, and the Sunlight Drainage District, in separate suits, brought action against the Board of County Commissioners of Big Horn County, Wyoming, and the Treasurer of the county, to recover certain drainage district taxes collected by the county treasurer and

turned into the general fund of the county. The facts in each of the cases are identical except as to the amounts involved, and the cases were consolidated in this court for the purposes of the appeal herein, and the result in one of the cases will be the result in the others. For the purpose of simplicity, we shall mention only the facts which appear in the Byron Drainage District case. The petition alleges that the plaintiff is a corporation organized and doing business as a drainage district; that it is the duty of the county treasurer to collect all drainage district taxes and assessments; that between April 21, 1928 and April 30, 1934, inclusive, the treasurers of Big Horn County collected the sum of $1,333.23 belonging to the plaintiff, and during said period the county treasurers wrongfully and unlawfully and without authority of law converted said sum for the use and benefit of Big Horn County and transferred it to the general fund of said county; that by reason of said wrongful conversion, plaintiff has been damaged in the sum of $1,333.23, for which judgment is prayed; that the plaintiff duly presented to the board a claim against Big Horn County, but that the claim was disallowed by the board. Attached to the petition is a copy of the claim presented to the board, which is as follows, to-wit:

"Comes now Byron Drainage District and respectfully represents to the Board of County Commissioners of Big Horn County that the County Treasurers of Big Horn County, from the 21st day of April, 1928, to the 30th day of April, 1934, inclusive, wrongfully and illegally transferred the sum of $1333.23 from the funds belonging to said Drainage District to the general fund of Big Horn County, thereby converting said money to the use and benefit of said Big Horn County; and a statement of the amounts so transferred and converted, together with the dates of such transfers, is as follows:

April 21st, 1928........................................$ 155.12
Jan. 15th, 1929........................................ 223.76
July 31st, 1929........................................ 312.76

| | |
|---|---|
| March 1st, 1931 | 87.40 |
| April 15th, 1932 | 75.00 |
| May 31st, 1932 | 67.10 |
| April 17th, 1933 | 327.33 |
| April 30th, 1934 | 84.75 |

Total, $1333.23

"That there is now due and owing from Big Horn County to said Byron Drainage District the sum of $1333.23, no part of which has been paid."

The defendants filed a demurrer, but subsequently withdrew it, and then filed separate answers denying each and every allegation contained in the petition. On August 8, 1935, the parties entered into a stipulation which reads as follows, to-wit:

"It is hereby stipulated and agreed, by and between the parties hereto, that the facts material to the issues in said cause are as follows:

"That between the 21st day of April, 1928, and the 30th day of April, 1934, inclusive, the county treasurers of Big Horn County, including the defendant D. C. Dungan, deducted from the funds collected by the said treasurer and his predecessors for said district the sum of Thirteen Hundred Thirty-three and 23/100 ($1,333.23) Dollars, and transferred said amount into the general fund of Big Horn County, Wyoming.

"That said amount was transferred for the purpose of charging said drainage district for advertising delinquent drainage taxes and assessments during said period, and for the further purpose of reimbursing said County of Big Horn, Wyoming, for the money expended by it for advertising said delinquent drainage taxes and assessments of said drainage district for said period of time.

"That Exhibit 'A' attached to plaintiff's petition, the same being a copy of the claim presented by said drainage district to Big Horn County, correctly sets forth an itemized statement of the amounts transferred from the said drainage district fund to the general fund of Big Horn County by the respective county treasurers each year during said period, for the purposes above mentioned."

On May 21, 1936, the court entered a judgment in favor of the defendants. A motion for a new trial was filed, which was granted. Thereupon the parties entered into a supplemental stipulation, to-wit:

"It is hereby stipulated and agreed by and between the parties hereto, that in addition to the facts set forth in the stipulation of counsel, heretofore filed herein, that the following are facts which exist with reference to the said controversy, to-wit:

"That for a number of years preceding the filing of the petition in said cause, the said plaintiff drainage district submitted its yearly assessments rolls to the County Commissioners of Big Horn County, who in turn certified to the same, delivered the roll to the assessor, and the same was thereafter extended on the tax roll of the county, and said drainage assessments collected by the County Treasurer, in the same manner as State and County Taxes were collected. That the said County Treasurer, in all cases where the said drainage assessments were not paid, listed the same on the delinquent tax roll and advertised the said list in the same manner and at the same time as for delinquent state and county taxes. That at the time and place of sale of real property for State and County taxes, the County Treasurer, during said years also separately sold the various parcels of land as listed for delinquent drainage assessments, and issued separate certificates of sale therefor. That in all instances during the past several years, there being no purchasers appearing to purchase the lands offered for sale for delinquent drainage assessments, the said County Treasurer would and did make an entry on his delinquent tax roll of 'Sold to Byron Drainage District of Big Horn County, Wyoming' and issued certificates of purchase to said district on said sale.

"That for a number of years prior to the year 1928, the said advertising and sale of lands for delinquent drainage taxes was conducted by the County Treasurer of said county without charge to said District, but that beginning in the year of 1928, and continuing during the years of 1929, 1930, 1931, 1932, 1933 and 1934, The County Treasurer of Big Horn County, Wyoming, without authority from said District, and over the pro-

test of said District, took various sums of money out of the collection of drainage assessments, which were kept in a separate drainage account in said County Treasurer's office, and transferred the same into the general funds of the County of Big Horn, presumably to cover advertising and collection charges on behalf of said drainage District. That the deductions and transfers from said Drainage account to the general fund of said County, as made by said County Treasurer, are as follows:

| | |
|---|---:|
| April 21, 1928, Transferred to general fund, county bill, | $155.12 |
| July 31, 1929, Adv. | 312.76 |
| Jan. 15, 1929, transferred to general fund, | 223.76 |
| March 1, 1931, Adv. & Col. July 30, | 87.40 |
| April 15, 1932, Adv. and Collection | 75.00 |
| May 31, 1932, Adv. & Col. to Jan. 1, 1932, | 67.10 |
| April 17, 1933, Adv. & Col. to Jan. 1, 1933, | 327.33 |
| April 30, 1934, Advertising, | 84.76 |
| | $1333.23 |
| Less Credit of | 75.00 |

"That the total amounts of said transfer from the drainage funds to the general county fund, as made by said County Treasurer, and as alleged in the petition filed herein, was $1258.23.

"That the affidavit of P. P. Anderson, publisher of the Basin Republican Rustler, attached hereto, and by reference made a part hereof, showing the actual publication fee charged to and paid by Big Horn County for the publication of delinquent drainage taxes in Byron Drainage District for the years as stated is correct, and that the proportionate part of the cost to Big Horn County of the publication of the delinquent tax list represented by the delinquent drainage assessments in the Byron Drainage District and on said tax list for the various years is as shown in said affidavit."

The affidavit of the publisher of the tax list, stated to be correct as above mentioned, shows that the county of Big Horn paid for publishing the delinquent tax list of the district during 1929 to 1936 inclusive, each year for the delinquencies of the previous year, the sum of

$345.54, the amount paid for 1929 being $28.56. It appears that in addition to the foregoing amount paid for publication, Big Horn County paid the sum of $75. Credit for that amount was allowed. The court entered judgment in favor of the drainage district in the sum of $913.00, together with interest thereon. A motion for a new trial was filed but overruled, and the defendants have brought this case here by petition in error. The term "defendants" as used in this opinion will designate the defendants in the court below, plaintiffs in error here.

1. It is contended that the petition does not state facts sufficient to constitute a cause of action. This is apparently on the ground that the allegation that the money in question belongs to the district is not a sufficient allegation of ownership of the money. We think counsel are in error. If, however, there was any defect in the petition, it was supplied by the agreed statements of facts. Counsel seem to think that the petition cannot thus be supplied. They have evidently overlooked our decisions in Claughton v. Johnson (on rehearing), 47 Wyo. 537, 548, 41 P. (2d) 527, and Marcante v. Hein, (Wyo.) 67 P. (2d) 196.

2. It is further contended that there was a misjoinder of parties defendant; that the county is not responsible for the torts of its officers; that it did not participate in the action of the county treasurer in diverting the funds of the drainage district into the general fund of the county. It is certain, however, that either one or the other of the defendants are liable herein. Counsel for defendants seems to think that only the county treasurer is responsible. No demurrer was filed on the ground of misjoinder, nor was the objection raised by answer. The defect, therefore, if defect it is, was waived. Section 89-1008, Rev. St. 1931; Gilland v. Ry. Co., 6 Wyo. 185, 43 Pac. 508; Becker v. Hopper, 22 Wyo. 237, 138 Pac. 179. We

might, however, say in this connection that the courts are not altogether harmonious in their holding as to what course should be followed in a case similar to that at bar. It is held that in collecting drainage district and similar taxes, the county treasurer acts for the district and not as a county officer. 15 C. J. 511; Dewey v. Niagara Co., 62 N. Y. 294; Vigo Twp. v. Knox County, 11 Ind. 170, 12 N. E. 305. Upon that theory it has been held that he diverts such taxes into the wrong channel at his peril, and may even be compelled to pay such taxes to the proper authorities under a writ of mandamus. 19 C. J. 761; cases cited in State v. McNamar, 62 Mont. 490, 205 Pac. 951, 955; Calhoun v. Maricopa etc. Dist., 37 Ariz. 506, 295 Pac. 785; City of Bisbee v. Cochise County, (Ariz.) 36 P. (2d) 559. In other cases it is held that when the county treasurer has paid the money into the general fund of the county, he is not liable, but that the county is. Fargo v. Cass County, 35 N. D. 372, 160 N. W. 75; Newbold v. Douglas, 123 Wisc. 28, 100 N. W. 1040; Cumming Twp. v. Ogemaw County, 100 Mich. 567, 59 N. W. 240; see also Kittanning Borough v. Mast, 15 Pa. Super. Ct. 51; State v. McFarlin, 78 Mont. 156, 252 Pac. 805; 18 R. C. L. 139. As already indicated, it is not necessary to decide which party or parties should be sued in such cases since the point was not raised in the court below.

3. It is further contended that the claim against the county was not sufficiently itemized when presented to the board of county commissioners, and that, accordingly, the court had no jurisdiction to enter any judgment herein. We are not at all certain that it was necessary to present any claim to the board of commissioners in this case, in view of the fact that the statute directs what shall be done with the money collected on drainage assessments. It was held in Bisbee v. Cochise County, (Ariz.) 36 P. (2d) 559, 561, that it is not necessary. But we need not decide the point. Counsel

has cited us to no case holding that the claim presented in this case was not sufficiently itemized. In the first stipulation entered into by the parties hereto it was stated that the claim presented "correctly sets forth an itemized statement of the amounts transferred from the said drainage district fund to the general fund of Big Horn County." Counsel for defendants at that time evidently thought that the claim was sufficiently itemized. And we think we should agree with their position then taken. They did not mention the point in the motion for a new trial, and it evidently presents a new contention, first taken in this court. If the defendants desired any information in addition to that given by the claim presented, they had that within their own control.

It is argued on behalf of the defendants, if we understand counsel correctly, that, according to Section 115-2305, Rev. St. 1931, which relates to the collection of general taxes, Big Horn County was entitled to charge any delinquent taxpayer, who failed to pay his drainage taxes, the sum of $3.00 for advertising such taxpayer's property; that the aggregate of the items of $3.00 each may have been greater than the actual cost of the advertising; again, that the record is uncertain on other points—for instance, that the item transferred to the general fund in 1928 may have been entirely composed of cost of advertising in previous years. Hence it is argued that there were not sufficient facts before the court upon which it could base its judgment. The drainage district was entitled to the principal amount of the assessments, together with the penalty and interest on any assessments not paid within the time provided by law. Riverton Valley Irr. Dist. v. Board of County Commissioners of Fremont County, decided Dec. 23, 1937 (74 P. (2d) 871). It was not entitled to more. And it is possible that the conjectures of counsel are correct. But they seem to assume

that there were no duties whatever incumbent upon their clients in this connection. If the case had been regularly tried and evidence introduced as to the amounts due and not due, and the defendants had introduced evidence that they had paid out a certain amount for advertisement, without making any other claim, the court would have had a right to assume that this amount, so shown, was all the amount so paid out and due and owing them. That is substantially the situation here. The parties entered into stipulations. Defendants were just as much parties thereto as the plaintiffs. They claimed therein that the items transferred were composed of collection charges and advertisements. They were not certain; it was, according to the stipulation, true only "presumably," except that they definitely stated the items actually paid out for advertisement. If any greater amounts were collected for that item, or if the defendant believed that more than the amount stated was due them, it would seem that they would have made a claim to that effect. That would be in accordance with the action of ordinary men. In the absence of making such claim, the court would naturally assume that no greater claim than asserted was made. We think that the court was justified in acting upon that natural assumption, and conclude that the facts stipulated were, in the absence of a statement to the contrary, all the facts having a material bearing in the case. Indeed, a statement to that effect was made in the first stipulation. The second stipulation was but amendatory thereof. Moreover, we find in the first stipulation the statement that the county treasurer "deducted from the funds collected * * * *for said district* the sum of $1333.23." In the second stipulation it is stated that the county treasurer during 1929 to 1934 inclusive took various sums (a total of $1333.23) out of the collection of *drainage*

assessments. Presumably, then, the funds belonging to the district, making it incumbent upon the defendants to show the contrary. If the county treasurer collected any money which belonged to the county and not to the district, he should not have mingled it with the funds of the district. If he did, the least that could be required of the defendants would be for them to show the mistake. See 22 C. J. 81.

5. It is contended that the district is not entitled to a general judgment herein, until its bonded indebtedness is paid. In that connection counsel state, in an offhand manner, that only the bondholders can complain and the district cannot sue, and that it does not have the capacity to sue. Drainage districts, however, are public or quasi-public corporations; they are the owners of the funds collected by taxation for their benefit, and may sue to recover them. 19 C. J. 761; Sec. 122-836, Rev. St. 1931. Bondholders, of course, must be protected in the manner in which the statute provides, but the district has sufficient interest to see that money which is to be set apart for the bondholders is not diverted by the county treasurer to the use of the county, for the taxpayers in the district are ultimately responsible for the payment of the bonds. Section 122-887, Rev. St. 1931, provides that drainage assessments shall be collected in the same manner and at the same time as state and county taxes, and when collected shall be paid to the treasurer of the drainage district, except that the money collected upon assessments levied for the payment of principal and interest of bonded indebtedness shall be retained by the county treasurer and paid upon the bonds and interest thereon, as long as any bonds are outstanding. But it does not appear herein that any bonds are outstanding. Counsel for defendants contend that we should presume that fact. It is difficult to see upon what principle

we can do so. On the contrary, we must presume, in the absence of a contrary showing that the county treasurer performed his duty. 22 C. J. 136. Hence we must presume that he retained in his hands, and did not put into the general fund of the county, money which belongs to bondholders.

We do not, however, like to leave this decision at that point, in view of the clear command of the legislature that the bondholders shall be protected, even though none of the parties hereto have thought fit to show the facts. The trial court found that the sums in question were deducted from the maintenance fund of the drainage district. If that finding is correct, the judgment is right. But it is sustained neither by any allegation in any pleading herein nor by any evidence. The interest of bondholders—third parties herein—as well as the defendants, might be prejudiced by an unconditional affirmance of the judgment herein. We think, accordingly, that the judgment herein should be affirmed, subject to the right of the defendants to show, if they desire, in further proceedings herein, that the sums involved herein, or some part thereof, should be retained for the benefit of, and paid to, bondholders of the district, and that upon such showing, the court enter such further judgment herein as may be required. See Riverton Valley Irr. Dist. v. Board, supra. It is so ordered.

*Affirmed.*

RINER and KIMBALL, JJ., concur.